**JOHN M. HAMILTON (State Bar No. 155381)**
**HAMILTON LAW OFFICES**
5757 W. Century Blvd., Suite 700
Los Angeles, CA 90045
Phone: (310) 348-2938
Facsimile: (310) 348-7288
Email: jm_hamilton15@yahoo.com

Attorneys for Plaintiff Turan Petroleum, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TURAN PETROLEUM, INC., | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **1) VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. § 1962;** |
| MINISTRY OF ENERGY OF THE REPUBLIC OF KAZAKHSTAN; TURAN ENERPETROLEUM LLP; ADILZHAN DZHAKISHEV; ASIA PACIFIC OIL & GAS, LTD; ASCENT INVESTMENTS, INC.; ASCENT INVESTMENTS, INC.; CALLUM HOLDINGS, LIMITED; AMIRZHAN JAKISHEV; YERBOL KELDIBAYEV; DARYA OSTROUSHKO, ALEXANDRA KLIMENTYEVNA and DOES 1-10, inclusive, | **2) FRAUD;** **3) UNJUST ENRICHMENT;** **4) DECLARATORY RELIEF;** **5) BREACH OF FIDUCIARY DUTY;** **6)TORTIOUS INTERFERENCE WITH BENEFICIAL COMMERCIAL RELATIONSHIP;** **7) CIVIL CONSPIRACY; and** **8) BREACH OF CONTRACT.** |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** **(F.R.C. P. Rule 38)** |

1

1    Plaintiff Turan Petroleum, Inc. ("Turan") for its Complaint against the

2    Defendants listed below alleges as follows:

3                                **JURISDICTION**

4    1.  This Court has subject matter jurisdiction over the First Claim for Relief

5    herein pursuant to 28. U.S.C. §1331 and 1332 in that they arise under United States

6    Statute 18 U.S. C. § 1962 (RICO). There is also complete diversity of citizenship

7    between the parties and the amount in controversy exceeds $75,000. This Court

8    has supplemental jurisdiction over the remaining Claims for Relief pursuant to 28

9    U.S.C. §1367 in that they arise from the same nucleus of operative facts as the

10   First Claim for Relief over which this Court has original jurisdiction and as such

11   are so related to that Claim that they form part of the same case or controversy

12   under Article III of the United States Constitution.

13   2.  This Court has personal jurisdiction over  the Defendants pursuant

14   to §1965(b) of RICO.

15                                **VENUE**

16   3.  Venue is proper in this District pursuant to 28 U.S.C §1391(b)(2) as a

17   substantial number of the events giving rise to this action occurred in this District,

18   and also under 18 U.S.C. § 1965(b).

19                                **PARTIES**

20   4.      Plaintiff Turan Petroleum Inc., ("Turan") is a Nevada Corporation

21   with its principal place of business located at 204 West Spear Street, Carson City,

22   Nevada. Turan has approximately 231 shareholders.

23   5.      Plaintiff Turan is informed and believes that defendant Turan

24   EnerPetroleum LLP., ("Turan Enerpetroleum") is a Limited Liability Partnership

25   formed in the Republic of Kazakhstan and holds a license to explore for

26   hydrocarbons issued by the Ministry of Oil & Gas of the Republic of Kazakhstan

27   and is based in the city of Almaty.

28   6.      Plaintiff Turan is informed and believes that the defendant Ministry of

2

Energy of the Republic of Kazakhstan, ("formerly known as the Ministry of Energy and Mineral Resources and the Ministry of Oil & Gas"), is the Government Ministry, responsible for issuing licenses for concessions and the transfer of rights under these licenses and has its Government headquarters in Astana, Kazakhstan.

7.     Plaintiff Turan is informed and believes that the Ministry is responsible for the illegal transfer of Turan's eighty percent (80%) interest in Turan EnerPetroleum to Asia Pacific Oil & Gas Ltd., under false and illegal pretenses as more fully described herein.

8. Plaintiff is informed and believes that defendant Adilzhan  Dzakishev ("Dzakishev") is a Republic of Kazakhstan citizen who received a U.S. permanent residence card  and resides in Newport Coast, California.

9. Plaintiff is informed and believes that defendant Asia Pacific Oil & Gas, Ltd ("APOG") is a corporation formed by its Registered Agent, "All About Offshore (Seychelles) Limited", which is domiciled in Mahe, Seychelles. Plaintiff is further informed and believes that defendant Dzakishev incorporated APOG on or about June 6, 2008.

10.Plaintiff is informed and believes that APOG is a business entity owned entirely by defendant Adilzhan Dzhakishev. Under the corporate structure of APOG and corporate rules and regulations of the IBC of Seychelles, the "Beneficial Owner" of a Seychelles corporation is the true and only actual owner of the corporation. This Court has jurisdiction over APOG, because this corporation participated in a racketeering enterprise.

11.Plaintiff is informed and believes that defendant Ascent Investment Inc. ("Wyoming"), is a Wyoming Corporation formed entirely by defendant Dzakishev, on or about January 20, 2010. Plaintiff is further informed and believes that said corporation is located in Cheyenne, Wyoming.

12.Plaintiff is informed and believes that defendant Ascent Investment Inc. ("Belize"), is a Belize Corporation located in Belize City, Belize and is a

3

1  business entity owned entirely by defendant Dzhakishev.

2      13.Plaintiff is informed and believes that defendant Callum Holdings

3  Limited ("Callum Holdings") is an unknown business entity owned entirely by

4  defendant Adilzhan Dzhakishev and his family members. This Court has

5  jurisdiction over Callum Holdings because this corporation participated in a

6  racketeering enterprise.

7      14.Plaintiff is informed and believes that defendant Amirzhan Jakishev

8  ("Jakishev") is a citizen of Kazakhstan. Plaintiff is further informed and believes

9  that the defendant is a U.S. permanent residency card holder. This Court has

10  jurisdiction over Jakishev because he participated in a racketeering enterprise.

11      15.Plaintiff is informed and believes that defendant Yerbol Keldibayev

12  ("Keldibayev") is a citizen of Kazakhstan. This Court has jurisdiction over

13  Keldibayev because he participated in a racketeering enterprise.

14      16.Plaintiff is informed and believes that defendant Darya Ostroushko is a

15  citizen of Kazakhstan. This Court has jurisdiction over Ostroushko because she

16  participated in a racketeering enterprise.

17      17.Plaintiff is informed and believes that defendant, Alexandra

18  Klimentyevana, ("Klimentyevana") is a citizen of the Republic of Kazakhstan and

19  is a language translator licensed under the Ministry of Justice of the Republic of

20  Kazakhstan. This Court has jurisdiction over Klimentyevana because she

21  participated in a racketeering enterprise.

22      18.  Plaintiff is ignorant of the true names and capacities of Defendants sued

23  as DOES 1-10, inclusive, and therefore sues those Defendants by fictitious names.

24  Plaintiff will amend this Complaint to allege their true names and capacities when

25  ascertained. Plaintiff is informed and believes and thereon alleges that each of

26  these fictitiously named Defendants are legally responsible in some manner for the

27  actions herein alleged, and that Plaintiff's damages were proximately caused by

28  their conduct.

4

1      19.  Plaintiff is informed and believes and, on that basis, alleges that in

2 connection with the acts set forth herein, each of the Defendants acted willingly,

3 intentionally, and knowingly, both for himself, herself, or itself, and in concert

4 with each other Defendant, and as an agent for each other Defendant, and was at all

5 times acting within the course and scope of such agency, with the consent,

6 authorization and/or ratification of each other Defendant, and in furtherance of

7 a common scheme to steal plaintiff's 80% interest in Turan Enerpetroleum, as

8 further discussed below.

9 **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

10 **A. Turan's Acquisition of Turan Enerpetroleum.**

11      20.In 2001, the Kazakhstan Government granted a concession for the

12 exploration and development of oil and gas resources (hereinafter "Arys

13 Concession") on approximately 5 million acres to a company that eventually

14 became Turan Enerpetroleum in 2005. Various geological surveys and seismic

15 tests of the Arys Concession have provided data and indications that the estimated

16 reserves of oil in the territory may be up to 1.1 billion barrels of crude oil and/or a

17 barrel of oil equivalent.

18      21.  If the actual oil reserves identified in the Arys Concession are proven to

19 be 1.1 billion barrels, then the value of the oil may exceed $100 billion given the

20 current price of oil.

21      22. On or about June 29, 2005, Turan obtained the rights to the Arys

22 Concession. Turan was registered with the Ministry of Justice of the Republic of

23 Kazakhstan under Certificate No. 63711-1901-TOO as the one hundred percent

(100%) shareholder of Turan Enerpetroleum.

24      23. After acquiring the Arys Concession, Turan undertook to develop and

25 explore the concession for oil and gas. During this period of time, Turan, its

26 shareholders, investors and/or its financial partners transferred over $24,000,000 to

27 either Turan Enerpetroleum, the Government, its employees, seismic companies,

28 drilling companies and law firms for the exploration of the Arys Concession for

5

gas and oil.

**B. Defendant APOG Purchases A Twenty Percent Interest in Turan Enerpetroleum.**

24. On or about January 7, 2009, Turan and defendant APOG entered into a Sale and Purchase agreement for APOG to purchase a twenty percent (20%) interest in Turan Enerpetroleum. On this date, defendant Dzhakishev signed on behalf of APOG an agreement where the company would purchase a twenty percent (20%) interest for $5,000,000. The agreement was signed and notarized in Newport Beach, California on January 7, 2009 and Aspostilled on January 8, 2009, by the Secretary of State for California.

25. Under the terms of the agreement, APOG would transfer the $5,000,000 directly to Turan Enerpetroleum. APOG was also required to issue a promissory note in the amount of $5,000,000 in favor of Turan Enerpetroleum. The promissory note was signed by defendant Dzhakishev at Newport Beach, California on January 7, 2009 in favor of Turan Enerpetroleum.

26. On January 7, 2009, defendant Adilzhan Dzhakishev issued a Power of Attorney ("POA") to defendant Amirzhan Jakishev, whereby Jakishev was authorized to implement the terms of the Sales and Purchase Agreement of January 7, 2009, with the Ministry of Justice of the Republic of Kazakhstan.

27. On January 27, 2009, defendant Adilzhan Dzhakishev signed Appendix 2 to the agreement whereby the terms of the original agreement were changed. Under this appendix, APOG paid $600,000 for its twenty percent (20 %) interest in Turan Enerpetroleum. APOG also agreed to pay $4,400,000 as a payment for the right to purchase 10,000,000 ordinary shares of Turan at $0.25 per share for a period on one year.

28. On January 27, 2009, Turan approved the agreement and issued a contract for the 10,000,000 shares to APOG.

29. On February 3, 2009, Defendant Adilzhan Dzhakishev, instead of APOG, made two wire transfers from his personal bank account at Wells Fargo Bank to

Turan. The first was for $600,000 and the second was for $4,400,000.

30. Plaintiff is informed and believes that the money came from Defendant's family members and in particular, Dzhakishev's father, S.A. Dzhakishev, who was later arrested and convicted on June 1, 2012 of financial crimes ("accepting bribes") in Kazakhstan for which he was sentenced to twelve years imprisonment. In effect, plaintiff is informed and believes that Adilzhan Dzhakishev laundered his father's bribe money into the United States through Turan by his personal transfer of funds to Plaintiff.

31. On March 31, 2009, defendant Dzhakishev emailed Turan and indicated that it was pledging its newly purchased interest in Turan Enerpetroleum to a company called Callum Holdings, which it claimed was a one hundred percent shareholder of APOG. Plaintiff is informed and believes and therefor alleges that the pledge was made to try to evade Kazakhstan officials from identifying the true source of the funds to purchase the interest.

32. Defendant Adilzhan Dzhakishev has refused to submit any proof to Turan on the ownership of Callum Holdings and its directors. Adilzhan Dzhakishev also refuses to provide loan document # LA-01-2009 as of January 8, 2009 showing a loan to APOG in the amount of $5,000,000 by Callum Holdings.

C. **APOG Misleads the Ministry of Energy in Kazakhstan and Claims it Invested $5,000,000 directly into Turan Enerpetroleum.**

33. After APOG signed the January 27, 2009 agreement, defendant Amirzhan Jakishev, acting under Power of Attorney dated January 7, 2009, issued by APOG, Adilzhan Dzhakishev and the General Director of Turan Enerpetroleum, applied on January 5, 2009, to the Ministry of Energy on and Mineral Resources ("now known as Ministry of Oil & Gas") in Kazakhstan for approval for the transfer of the twenty percent (20%) interest in Turan Enerpetroleum. In the documents filed with the Ministry, APOG claimed it had transferred the $5,000,000 directly to Turan Enerpetroleum as full payment for its 20% purchase of Turan Enerpetroleum under the January 7, 2009 Sales & Purchase

agreement.

34. On February 26, 2009, based on information provided by Turan Enerpetroleum and Amirzhan Jakishev a meeting was held by the "Interagency Commission" of the "Ministry of Energy and Mineral Resources" whereby a request was made to the Ministry asking for the approval to transfer the 20% interest to APOG under the "Minutes of Meeting #2 as of February 26, 2009. The Ministry denied the request to transfer the 20% interest to APOG.

35. On February 27, 2009, based on the false information provided by Amirzhan Jakishev, the Ministry of Energy and Mineral Resources approved the transfer of the 20% interest to APOG under the "Minutes of Meeting #3" as of February 27, 2009.

36. Within two months of the transfer of the funds from defendant Dzhakishev's personal bank account to Turan, on April 2, 2009, unbeknownst to Turan, Adilzhan Dzhakishev of APOG sent a letter to the General Director of Turan Enerpetroleum, whereby, Adilzhan Dzhakishev accused Turan of being in violation of the terms of the January 7, 2009 Sales & Purchase Agreement and requested that the General Director of Turan EnerPetroleum exclude Turan from the partnership.

37. Plaintiff alleges that APOG and Adilzhan Dzhakishev had planned to attempt to steal Turan's eighty (80%) percent interest in Turan Enerpetroleum under false accusations and pretenses since signing the Sales and Purchase agreement of January 7, 2009.

**D. The Arrest of The Concession Arys Concession Due to Defendant Dzakishev's Actions.**

38. On or about July 26, 2011, the Head of the Agency on Fighting Economic and Corruption Crimes ("Financial Police"), Almaty Department of Justice of the Republic of Kazakhstan seized APOG's twenty percent interest in Turan Enerpetroleum. The investigation was instigated and undertaken by three members of the Financial Police that included D. Sakenov.

8

39. The seizure of APOG's interest in Turan Enerpetroleum came about from an investigation of S. A. Dzhakishev, a Judge of the Supreme Court of Justice of the Republic of Kazakhstan and father of defendant Adilzhan Dzhakishev concerning the bribing of another Judge of the Supreme Court, A. D. Tashenova.

40. According to the jury verdict, S. A. Dzhakishev was found guilty of criminally attempting to bribe Judge, A. D. Tashenova in February 2011, with a particularly large amount of money for A. D. Tashenova to facilitate his illegal actions for his benefit.

41.Plaintiff alleges that defendant Adilzhan Dzhakishev concealed the fact that APOG's 20% interest in Turan EnerPetroleum had been arrested from Turan. In fact, Adilzhan Dzhakishev sent an email to Maurice Frosch on April 11, 2011, stating his father, S. A. Dzhakishev had been wrongfully accused of bribery and that he expected that his father would be exonerated in a few weeks. He stated that the criminal charges would not affect the APOG, Turan EnerPetroleum and Turan transaction for the sale of Turan EnerPetroleum shares to a third party, Cyrus Holdings LLC. ("Cyrus Holdings") In reality, the seizure of the interest prevent any sale.

42.On February 13, 2012, the board of APOG sent a letter to the Head of the Agency Fighting Economic and Corruption Crimes ("Financial Police"), whereby, APOG claimed that defendant Adilzhan Dzhakisev, was not a shareholder in APOG and was only one of its Directors who was responsible for the company's projects in Eastern Europe. This letter was not signed by any member of the board of APOG as there was no board of APOG and the truth was defendant Adilzhan Dzhakishev was the sole director, CEO and sole shareholder of APOG. Moreover, the money transferred to buy the twenty percent interest in Turan Enerpetroleum came from his personal bank account in an attempt to launder the funds from his father, S. A. Dzhakishev.

43. The statement by the board of APOG is completely false as defendant Adilzhan Dzhakishev, on May 12, 2009, 20 days before the sentencing of his

9

father, S. A. Dzhakishev on June 1, 2012, transferred one hundred (100) shares of APOG stock to Ascent Investments ("Belize"). These 100 shares represented exactly one tenth of one percent of APOG stock out of one hundred thousand shares issued. These shares were issued by the sole director, CEO and shareholder of APOG, Adilzhan Dzhakishev. This shows the intent of Adilzhan Dzhakishev to deceive the Financial Police and the Courts of the Republic of Kazakhstan during his father's sentencing. This letter was sent by Adilzhan Dzhakishev from the U.S. in violation of Federal statutes on wire fraud in an attempt to deceive the police and courts of a foreign government.

44. Plaintiff alleges that Adilzhan Dzhakishev was the sole owner of Ascent Investments ("Belize") or the corporation does not exist in Belize.

45. Plaintiff alleges that on January 20, 2010, Adilzhan Dzhakishev, formed Ascent Investments ("Wyoming") under Initial Filing ID No. 2010 -000579238, with corporate office in, Cheyenne, Wyoming.

46. The Corporation was dissolved on 03/11/2014 for failure to pay its tax obligations to the State of Wyoming.

47. Plaintiff alleges that the actual reason the corporation in the State of Wyoming was dissolved or allowed to be dissolved by defendant Adilzhan Dzhakishev, was to hide the fact of another Ascent Investments, from Turan, Financial Police and the Kazakhstan Courts.

48. At no time, did defendant Adilzhan Dzhakishev inform plaintiff that APOG'S twenty percent interest had been arrested by the Department of Justice in Kazakhstan and because of the arrest of APOG's twenty percent interest, no development could be undertaken on the Arys Concession.

49. On or about February 11, 2011, Cyrus Holdings entered into a Memorandum or Understanding to purchase a sixty-five (65%) percent interest in Turan EnerPetroleum for $22,500,000. Defendant Adilzhan Dzhakishev signed the Memorandum of Understanding in Newport Beach, California.

50. On April 19, 2011, defendant Adilzhan Dzhakishev sent an email to a

Director of Cyrus Holdings which indicated that his father, S. A. Dzhakishev had been arrested on false charges. The email stated that the arrest would not have any effect on the Cyrus purchase of the 20% interest in Turan Enerpetroleum of APOG. Nowhere in the email did it indicate the concession could be seized by the Republic of Kazakhstan.

51.On September 15, 2011, defendant Adilzhan Dzhakishev signed an extension to the Memorandum of Understanding dated as of February 11, 2009, whereby the extension document extended the terms of the MOU to November 1, 2011. Adilzhan Dzakishev signed this extension approximately 50 days after the seizure of the APOG 20% interest in Turan Enerpetroleum.

52. Plaintiff is informed and believes and thereon alleges that Defendant Adilzhan Dzhakishev knew about the criminal investigation into his family and the possibility APOG's interest in Turan Enerpetroleum could be arrested at the time he signed the extension to the memorandum of understanding.

53. Thereafter, the sale to Cyrus was not completed because of the actions of Defendant, Adilzhan Dzhakishev and APOG, by the arrest of the concession, which caused major financial damage to Turan.

**E.  The Illegal Board Meetings of Turan Enerpetroleum in 2013.**

54. On September 25, 2013, Adilzhan Dzhakishev sent an email to Anatoly Vanetik, President of Turan, stating that Adilzhan Dzhakishev had resigned from the board of APOG and that he was turning over APOG to its main creditor. Adilzhan Dzhakishev stated that the new owners of APOG had decided to keep him in his position of CEO and Director during the transition period.

55.Plaintiff alleges that the only creditor of APOG and Adilzhan Dzhakishev was Callum Holdings, which had been approved by Turan on March 31, 2009.

56.On September 25, 2013 email, Adilzhan Dzhakishev, asked Turan to accept a change in ownership of Turan EnerPetroleum in favor of APOG for 100% of Turan EnerPetroleum. APOG then offered Turan 10% of the net proceeds from any oil sales in the future. Turan turned down this offer and refused to relinquish

its 80% interest in Turan EnerPetroleum.

57. On October 21, 2013, Adilzhan Dzhakishev, in a press release, resigned as CEO and Director of APOG.

58. On October 21, 2013, a document was produced for the General Director of Turan EnerPetroleum on APOG letterhead supposedly showing that APOG had called a supposed Special Meetings of the Members Resolution (by Consent Memorandum of Sole Member), whereby, APOG supposedly elected defendant Yerbol Keldibayev as Director of the company.

59. Plaintiffs allege that this document was a fake and complete fabrication instituted by defendant Adilzhan Dzhakishev as the Beneficial Owner of APOG.

60. This Member's Resolution was signed by defendant Darya Ostroushko, as Director, ("for and on behalf of Ascent Investments Inc"). This document was sealed with the corporate seal of APOG and on the letterhead of APOG.

61. Plaintiff alleges that this supposed Resolution of Members should have been issued on the letterhead of Ascent Investments as the sole shareholder of APOG and that this resolution was a fake document and a complete fabrication issued by defendant Adilzhan Dzhakishev as the Beneficial Owner of APOG.

62. Plaintiff alleges that defendant Darya Ostroushko had no right as a shareholder to use the corporate seal of APOG, as she produced no corporate documents to the General Director of Turan EnerPetroleum showing her as a Director of Ascent Investments and /or a Director of APOG.

63. This resolution was not Notarized and Apostilled in Belize or Seychelles as required by The Hague Convention and/or the Republic of Kazakhstan laws.

64. Plaintiff alleges that this Resolution is fake and a complete fabrication document as perpetrated by defendants Adilzhan Dzhakishev, Darya Ostroushko and Yerbol Keldibayev in an attempt to steal Turan EnerPetroleum from its real owner, Turan.

65. Plaintiff alleges that by issuing this document in the Republic of

12

Kazakhstan, these individuals committed wire fraud under Federal Statutes of the USA, by sending this document by email form the USA to the Republic of Kazakhstan, as the only Ascent Investments, is a corporation formed by Adilzhan Dzhakishev in the State of Wyoming on January 20, 2010.

66. Using this fake and fabricated resolution, on or about October 25, 2013, Yerbol Keldibayev, the supposed new director of APOG called for an Extraordinary General Meeting of the Board of Director of Turan EnerPetroleum. The board meeting was scheduled for November 11, 2013.

67. Plaintiff alleges that when the General Director requested corporate documents from Ascent Investments Inc., proving the ownership interest in APOG by Darya Ostroushko, he was told by Defendants Darya Ostroushko and Yerbol Keldibayev that these corporate records did not exist.

68. The agenda for the board meeting was the forced sale of Turan's 80% interest in Turan EnerPetroleum. The board meeting was opened by the General Director of Turan EnerPetroleum, but was canceled due to a "lack of a Quorum" as APOG refused to recognize the Power of Attorney issued by Turan to Arman Rakhimzhanov, Turan's Republic of Kazakhstan representative for the board meeting.

69. On or about November 11, 2013, APOG called for another Extraordinary General Meeting of the Board of Director of Turan EnerPetroleum. (The board consisted of Turan's 80% and APOG's 20%). The board meeting was scheduled for November 26, 2013. The agenda for the board meeting was the forced sale of Turan's 80% interest in Turan EnerPetroleum. The board meeting was opened by the General Director of Turan EnerPetroleum, but was canceled again, due to a "lack of a Quorum" as APOG refused to recognize the Power of Attorney issued by Turan to Arman Rakhimzhanov, its Republic of Kazakhstan representative for the meeting.

70. On or about December 3, 2013, defendant Yerbol Keldabayev called for an Extraordinary General Meeting of the Board of Director of Turan

EnerPetroleum. (The board consisted of Turan 80% and APOG 20%). The board meeting was scheduled for December 21, 2013. The agenda for the board meeting was the forced sale of Turan's 80% interest in Turan EnerPetroleum.

71. The board meeting was opened by the General Director of Turan EnerPetroleum, whereby, the attorney for APOG, Askar Gusmanov elected himself Chairman of the General Meeting and Yerbol Keldibayev as Secretary. The illegal representatives of APOG then voted to forbid the Turan representative, Arman Rakhimzhanov, to vote at the Extraordinary General Meeting because these supposed representatives of APOG falsely claimed his Power of Attorney was improper. This vote was taken by these illegal representatives under the objection of the General Director of Turan EnerPetroleum.

72. The supposed representatives of APOG, did not have the proper Power of Attorney to even call an Extraordinary General Meeting of the board of Turan EnerPetroleum.

73. These powers of attorney of the alleged representatives of APOG were not Notarized or Aspostilled in the Seychelles ("APOG country of domicile") as required under The Hague Convention, International law and the laws of the Republic of Kazakhstan.

74. These powers of attorney were also illegal as defendant  Yerbol Keldibayev, is not the true Beneficial Owner of APOG. He is just a Nominee Director doing the bidding of defendant  Adilzhan Dzhakishev, who is the only person associated with APOG, that can legally issue a power of attorney on behalf of APOG.

75. This illegal and unauthorized vote by APOG, determined that Turan, which owns eighty percent (80%) of Turan EnerPetroleum, would not be allowed to vote at the meeting.

76.  Thereafter, the alleged representatives of APOG voted in favor of initiating a lawsuit against Turan to force compulsory redemption of Turan's eighty percent interest in Turan Enerpetroleum. Thus, if APOG prevailed in its

14

duplicitous scheme, it would own one hundred percent of Turan Enerpetroleum for $600,000 and steal approximately $24,000,000 million from Turan, its investors, its debtholders and its approximately 231 shareholders.

## F. **APOG Introduces False and Fraudulent Documents and Testimony at the Trial.**

77. On or about February 19, 2013, Turan Enerpetroleum filed an unauthorized complaint with the Specialized Inter-District Economics Court ("Almaty Court"). The lawsuit was filed pursuant to the unlawful and illegal board meeting of December 21, 2013.

78. The trial began on or about October 9, 2014, with Judge Anar Bidakhmetkyzy Karasheva presiding. The first 5 hearings of the trial were completely about the authorities of Ascent Investments, Darya Ostroushko, APOG and Yerbol Keldibayev. Turan's president, Maurice Frosch, had explained to the court that these individuals were not part of Ascent or APOG and only working on behalf of defendant Adilzhan Dzhakishev in an attempt to steal Turan's 80% interest in Turan EnerPetroleum.

79. At this hearing, Turan was required by Judge Karasheva to submit Notarized and Apostilled Corporate documents of Turan, its President, Maurice Frosch from the USA, as a foreign corporation.

80. Turan's representatives and attorneys were also required to submit Notarized and Apostilled Powers of Attorney from the USA as a foreign corporation.

81. The supposed representatives of APOG ("a foreign corporation domiciled in Seychelles") were only required by Judge Karasheva, to submit their Republic of Kazakhstan Identification Cards in violation of the Hague Convention, International law and the laws of the Republic of Kazakhstan as a foreign corporation.

82. Plaintiff Turan complained vigorously to the court that APOG ("represented by Yerbol Keldibayev") and Ascent Investments ("represented by

Darya Ostroushko"), were not the actual owners or representatives of these foreign corporations and that these individuals and corporations must submit Notarized and Aspostilled powers of attorneys and Corporate documents to the court proving they actually represent these corporations as Turan was required to do. The judge finally ordered during the course of the hearing that these individuals need to submit their powers of attorney and corporate documents at the next hearing.

83. On or about October 24, 2014, with Judge Anar Bidakhmetkyzy Karasheva presiding, Turan's president requested that the court review the Notarized and Aspostilled powers of attorney and corporate documents of both Ascent Investments and APOG, proving the authorities of Darya Ostroushko and Yerbol Kelidbayev as representatives of the corporations Ascent and APOG.

84. The judge requested these documents from these individuals and Ascent failed to provide even one document to the court proving Darya Ostroushko actually owned ("100") shares in APOG or was a Director of Ascent as it was Darya Ostroushko that had hired defendant Yerbol Keldibayev as the Director of APOG using false and faked documents. Maurice Frosch, President of Turan requested that Darya Ostroushko be required to submit these documents. The court ordered Darya Ostroushko to submit the documents and Darya Ostroushko told the court that these documents did not exist and that she was the Director of Ascent by a simple resolution, which she was unable to provide to the court. At no time during seven (7) court hearings did Darya Ostroushko submit any documents to the court proving her position in Ascent Investment. The reason that she could not submit these documents is that she is not a Director of Ascent in Belize and either this corporation does not exist or is controlled by defendant Adilzhan Dzhakishev and his family.

85. Defendant Yerbol Keldibayev then submitted a false and fabricated document to the court that was supposedly sent from Seychelles. This document ("Certificate of Incumbency"), dated October 14, 2014) was Aspostilled as a

1  translation through Vialan Translation Concepts of Irvine, California in the
2  United States, in clear violation of the Hague Convention, International law and
3  the laws of the Republic of Kazakhstan. This document was required to be
4  Notarized and Apostilled in Seychelles.

5      86. This "Certificate of Incumbency" was only Aspostilled by Vialan as a
6  translation and not Notarized as defendant Yerbol Keldibayev ("the supposed
7  Director of APOG") never appeared before Alla Khoroshkova as required to have
8  a document Notarized. The actual and only person appearing before Alla
9  Khoroshkova, was defendant Adilzhan Dzhakishev, the only person authorized to
10 obtain a document from the Seychelles as the Beneficial Owner of APOG, which is
   one full year after he supposedly resigned as the Sole Director of APOG.

11     87. Turan's president, Maurice Frosch, complained to the court that this
12 "Certificate of Incumbency" was a fake and fabricated document by defendant
13 Adilzhan Dzhakishev as the actual Beneficial Owner of APOG in an attempt to
14 steal Turan's eighty percent (80%) interest in Turan EnerPetroleum and that this
15 "Certificate of Incumbency" was sent by USA Postal or a Courier Company
16 ("DHL") to Kazakhstan by defendant Adilzhan Dzhakishev in violation of USA
17 laws.

18     88. At no time during these eight court hearings did APOG submit its
19 corporate documents to the court or was required to do so by Judge Karasheva
20 under the objection of Turan's president.

21     89. The judge then requested for the third time that defendants Yerbol
22 Keldibayev and Darya Ostroushko, submit Notarized and Apostilled corporate
23 documents for Ascent Investment and APOG.

24     90. On or about October 26, 2014, another court hearing was held in Judge
25 Karasheva court concerning the authorities of Ascent Investment and APOG. At
26 this hearing Askar Gusmanov, ("the fake representative lawyer of Turan
27 Enerpetroleum") requested additional time from Judge Karasheva to get the
28 documents from Seychelles. This request was granted by Judge Karasheva.

1    91.On or about October 30, 2014, another hearing was held in Judge
2    Karasheva's court on the authorities of Ascent and APOG. Yerbol Keldibayev of
3    APOG and Darya Ostourshko of Ascent Investments failed to provide any
4    Notarized and Apostilled corporate documents from Seychelles or Belize. Maurice
5    Frosch, President of Turan, complained that these individuals were not who they
6    claimed to be and were just acting on behalf of defendant Adilzhan Dzhakishev in
7    his attempt to steal Turan's eighty percent (80%) interest in Turan EnerPetroleum.
8    Mr. Frosch also complained to the court that Turan was being held to a different
9    standard then Ascent Investment and APOG, as Turan was required from day one
10   of the court hearing on or about October 9, 2014, to submit Notarized and
     Apostilled corporate documents and powers of attorney for its representatives.

11       92.On or about October 30, 2014, Maurice Frosch, President of Turan filed a
12   reply to the claim against Turan in the court of Judge Karasheva. Judge Karasheva
13   rejected the reply from Maurice Frosch, President of Turan without any verbal
14   explanation and failed to write the reason for this rejection in her written court
15   ruling.

16       93. On or about November 5, 2014, Maurice Frosch, President of Turan
17   filed a reply to the claim against Turan in the court of Judge Karasheva. Judge
18   Karasheva rejected the reply from Maurice Frosch, President of Turan without any
19   verbal explanation and failed to write the reason for this rejection in her written
20   court rulings.

21       94.On or about November 5, 2014, another court hearing was held in Judge
22   Karasheva's court. At this hearing, APOG submitted a fake and fabricated
23   Apostilled and Notarized document with an attached "Certificate of Incumbency",
24   dated November 3, 2014, that was supposedly Notarized and Apostilled in the
25   Seychelles.

26       95.This "Certificate of Incumbency" was not notarized or Apostilled in the
27   Seychelles and was a completely fabricated document by defendants Yerbol
28   Kedibayev and Adilzhan Dzhakishev. This document was not sealed, taped or

glued in the Seychelles as required of a legal Notarized document for use in a foreign country under The Hague Convention, International law and the laws of the Republic of Kazakhstan.

96. For this Notarized and Apostilled "Certificate of Incumbency" to have been legally notarized in the Seychelles, this would have required Yerbol Keldibayev to personally appear in front of the notary as the Director of APOG, who's name appears on the "Certificate of Incumbency" under the laws of The Hague Convention, International Treaties and the laws of the Republic of Kazakhstan.

97. This supposed Notarized and Apostilled "Certificate of Incumbency" from Seychelles was then brought to the Republic of Kazakhstan, where it was then supposedly translated by a certified licensed translator with a license issued by the Ministry of Justice of the Republic of Kazakhstan. This certified translator, defendant Alexandra Klimentyevna, claimed that she had personally translated this "Certificate of Incumbency" dated November 3, 2014, in Kazakhstan.

98. This Notarized and Apostilled "Certificate of Incumbency" was not translated by the certified translator, defendant Kim Klimentyevna in Kazakhstan as the most important page in the document was translated by Alla Khoroshkova of Vialan Translation Concepts, Inc., on October 14, 2014. The name of Vialan actually appears at the top of the page as being translated in the USA by her firm. This "Certificate of Incumbency" dated November 3, 2014 had actually been translated by Vialan Translation Concepts, Inc., on October 14, 2014. This translated page was actually taken from the translation done by Vialan Translation Concepts, Inc., on October 14, 2014 and inserted into the Notarized and Apostil "Certificate of Incumbency" supposedly notarized in Seychelles.

99. This document was then taken to a Certified Notary by the Kazakhstan translator to Aizhan Saikenova Nagradkyzy, whereby, the notary certified the signature of the translator on the "Certificate of Incumbency", dated November 3, 2014.

100.   At this same hearing in Judge Karasheva's court, Turan's President, Maurice Frosch or his legally empowered representatives were not allowed to challenge the authenticity of the original copy of Notarized  and Apostilled document from the Seychelles by Judge Karasheva and not allowed to review the original translation supposedly done by the Kazakhstan translator.

101.   At this same hearing, Turan's President, Maurice Frosch, demanded that Judge Karasheva require Darya Ostroushko to submit her corporate documents from Ascent. Judge Karasheva said to the President of Turan, Maurice Frosch and his legal representatives that she had heard him ask the court many times and that Ascent had failed to provide the documents and not to ask the court again.

102.   At this same hearing the President of Turan asked the Judge to rule on the authorities of Darya Oshtrousko of Ascent Investment and Yerbol Kedibayev of APOG. Judge Karashava told Mr. Frosch, she would rule on the authorities at the next hearing.

103.   At this same hearing, Mr. Frosch, President of Turan requested that the court hold the Plaintiffs and Defendants to the same standards before the court.

104.   On November 11, 2014, Turan's President, Maurice Frosch filed a complaint with the court to reject/replace Judge Karasheva on the grounds of being biased in favor of Yerbol Keldibayev of APOG and Darya Oshtrushko of Ascent Investment and for failing to follow Civil Procedures Code of the Republic of Kazakhstan, International Treaties and the Hague convention as the Republic of Kazakhstan is a signature to this treaty.

105.   On November 11, 2014, a separate Judge of the court denied the request by Maurice Frosch, President of Turan to replace/reject Judge Karaksheva.

106.   This decision was only read in court by Judge Karasheva and Maurice Frosch, President of Turan, was never given a written reply or an explanation for the rejection until January 15, 2015. This is a clear violation of the Civil Procedure Code of the Republic of Kazakhstan and the Constitutional Rights of a foreign

citizen in the Republic of Kazakhstan.

107.   On or about November 18, 2014, with Mr. Frosch, President of Turan absent from the court. ("Judge Karasheva had told Mr. Frosch at the previous hearings that she would not rule on the authorities without Maurice Frosch being present"), Judge Karasheva, held another hearing where she failed to rule on the authorities of Yerbol Keldibayev and Darya Ostroushko.

108.   Judge Karaheva stated at the November 18, 2014, hearing that she had accepted the claim by the Plaintiffs by mistake in the first place and she would now only rule on the authorities after hearing the merits of the case. Judge Karasheva proceeded on the merits of the case without the presence of Maurice Frosch, President of Turan in the court. She also proceeded knowing full well that Yerbol Keldibayev and Darya Ostroushko had no authorities to represent the Plaintiff in the case.

109.   At this hearing on or about November 18, 2014, Judge Karasheva allowed the Plaintiffs to proceed with the questioning of witnesses/auditors that had no credentials proving they were expert witnesses and licensed to conduct an audit of Turan EnerPetroleum. These witnesses/Auditors told Judge Karasheva that they would bring their credentials to the next hearing.

110.   On or about November 26, 2014, with Maurice Frosch, President of Turan, absent from the court, the court held a hearing on the merits of the case. At this hearing, Turan's representative requested the credentials of the witnesses/auditors. These auditors stated that they were not required to have licenses and Judge Karasheva allowed these witnesses/auditors to provide expert testimony in clear violation of the Republic of Kazakhstan laws.

111.   At this same hearing, Judge Karasheva allowed these unlicensed auditors to use documents in court that were provided by the Plaintiffs themselves. These documents were required to be submitted directly to the court by expert witnesses and not by the Plaintiffs under the Civil Procedure Code of the Republic of Kazakhstan. These documents were also obtained illegally by the Plaintiffs and

the supposed audit was paid directly by the Plaintiffs and not Turan
EnerPetroleum.

112.   On or about December 3, 2014, Judge Karasheva held another hearing on the merits of the case. Maurice Frosch, President of Turan, had filed a witness list with the court that included the General Director of Turan EnerPetroleum, its former General Director and other witnesses to refute these auditors' claims and other claims made by the Plaintiff.

113.   Before this hearing in the hallway of the court, Judge Karasheva said she would be ruling that day. During the hearing Judge Karasheva denied the request of Turan to call any witnesses and Turan was not allowed to present any case or call rebuttal witnesses even after the Plaintiffs used documents in court against Turan. Judge Karasheva said she would only take testimony in writing.

114.   On December 4, 2014, at the conclusion of the trial, Judge Karasheva ruling on the fraudulent evidence and testimony submitted by the fraudulent representatives of APOG and Turan EnerPetroleum, the court held that Turan's eighty percent (80%) interest in Turan Enerpetroleum could be bought out for 80 Tenge which is the equivalent of $.43 cents.  Furthermore, the Court ruled that Turan owed to Turan Enerpetroleum approximately $12,600,000.

115.   The court's ruling based on fraudulent persons being in the court and fraudulent evidence provided by the Plaintiff and testimony of APOG effectively destroyed Turan's capital and that of its 231 shareholders.

116.   Turan is also examining it other rights against Kazakhstan before the International Court of Settlements.

### FIRST CLAIM FOR RELIEF
**(Violation of the Racketeer Influenced and Corrupt Organizations Act)**
**(Against Defendants Turan Enerpetroleum, Dzhakishev, APOG, Ascent Investments(Belize),Ascent Investments(Wyoming), Inc., Callum Holdings, Jakishev, Keldibayev, Ostroushko, Kim and Does 1-10)**

117.   Plaintiff realleges and incorporates by references, as though set forth

1  in full, paragraphs 1-116, above.

2      118.   Plaintiff is informed and believes that Defendants, and each of them,

3  constitute an enterprise (hereinafter, the "Enterprise"), as defined by 18 U.S.C.

4  §1961, the activities affect interstate commerce.

5      119.   Defendants are persons defined under 18 U.S.C. §1961, employed by

6  or associated with the Enterprise who have participated, directly or indirectly in the

7  conduct of the Enterprise's affairs, and have agreed to conduct or participate,

8  directly or indirectly, in the conduct, management, or operation of the Enterprise's

9  affairs through a pattern of racketeering activity in violation of 18 U.S.C § 1962(c).

10      120.   Plaintiff alleges that the defendants have use the mail and wire to

11  further the scheme of the Enterprise in violation of 18 U.S.C §§ 1341 and 1343.

12      121.   As a direct result of the defendants' conspiracy and the acts of the

13  racketeering activity of the Enterprise, Turan has been injured in its business and

14  has wrongfully lost its eighty percent (80%) ownership interest in Turan

15  Enerpetroleum.

16      122.   Under 18 U.S.C § 1964(c), Turan is entitled to treble damages and

17  attorney fees.

18  **SECOND CLAIM FOR RELIEF**

19  **(Fraud)**

20  **(Against Defendants Turan Enerpetroleum, Dzhakishev, APOG, Ascent**

21  **Investments (Belize), Ascent Investments(Wyoming), Callum Holdings,**

22  **Jakishev, Keldibayev, Ostroushko, and Does1 -10)**

23      123.   Plaintiff realleges and incorporates by reference, as though set forth in

24  full paragraphs 1 through  122, above.

25      124.   Defendants and their agents have knowingly misrepresent, omitted,

26  and concealed material facts in their pleadings and representations to the Almaty

27  Court. The defendants' false representations are detailed throughout this complaint.

28  These false representations include but are not limited to (1) their claim that APOG

paid Turan $5,000,000 for it twenty percent interest in Turan Enerpetroleum; (2)

their claim that Dzhakishev is not an officer or owner of APOG, (3) introducing false documents and testimony with the Court, and (4) the claims that Ascent Investment or Callum Holdings owns or controls APOG.

125.   Defendants made these false representations and statements to the Almaty Court while knowing that their representations were materially false and/or omissions were material.

126.   Defendants made these false representations and false submissions to The Almaty Court in the hopes of obtaining a favorable judgment and to damage Turan and its shareholders. These false representations and false submissions were relied on by the Almaty Court in determining its judgment.

127.   Turan has been substantially harmed as a result of the defendants' fraudulent conduct.

128.   Defendants are guilty of recklessness, oppression, fraud and malice With and, therefore, Turan is entitled to punitive damages against each of them.

### THIRD CLAIM FOR RELIEF

### Unjust Enrichment

**(Against Defendants Turan Enerpetroleum, Dzhakishev, APOG, Ascent Investments(Belize), Ascent Investments(Wyoming), Callum Holdings, Jakishev, Keldibayev, Ostroushko, and Does1 -10)**

129.   Plaintiff realleges and incorporates by reference, as though set forth in full paragraphs 1 through 128, above.

130. Defendants have caused the Alamaty Court to enter a fraudulent judgment which takes away plaintiff's 80% interest in the Turan Entropetroleum, LLP which owns valuable oil and gas rights in the Arys concession in Kazakhstan. The court further entered a judgment in the sum of $12,640,000 against Turan which was based on false and fraudulent documents the defendants submitted to the Court.

131.  Therefore, the defendants have obtained plaintiff's 80% interest in the Arys concession in Kazakhstan and the judgment based on their tortious, illegal, and fraudulent conduct, as set forth herein.

132.  Principles of equity require that this Court prevent defendants from stealing their interest in the Arys concession and obtaining a fraudulent judgment against it.

133. Because of the defendants' fraudulent activity, they have been unjustly enriched, all to the detriment of Turan.

## FOURTH CLAIM FOR RELIEF

### Declaratory Relief that the Judgment By the Almaty Specialized Inter-Regional Economic Court is unenforceable

### (Against defendants  Dzakishev, APOG, and Ministry of Energy of the Republic of Kazakhstan and does 1-10)

134. Plaintiff realleges and incorporates by reference, as though set forth in full paragraphs 1 through  133, above.

135. Turan is entitled to a declaratory judgment that the judgment from the Almaty Specialized Inter-Regional Economic Court is unenforceable and non-recognizable pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201(a).

136. A declaratory judgment will not improperly increase friction between sovereign legal systems because no court has a right to impose fraudulent judgments such as the one the Almaty Specialized Inter-Regional Court imposed against plaintiff Turan.

137. Turan seeks a declaratory judgment from this Court that the Almaty Specialized Inter-Regional Economic Court's judgment is unenforceable and not recognizable, including but not limited to the United States Constitution, federal common law, Nevada  and California law, because fraud in the proceedings, the court's failure to provide proceedings compatible with due process, the Court's lack of impartiality, and contravention of public policy.

137. By reason of the fraudulent acts and fundamentally unfair proceedings described in plaintiff's Complaint that have given rise to the Almaty Court's judgment, and actual controversy exists between Turan and defendants Dzakishev, APOG, and the Ministry of Energy of the Republic of Kazakhstan as to whether the judgment is unenforceable in the United states and its assets and interests are safe from the defendants fraudulent activity. Unless the controversy is resolved, defendant Dzakishev and APOG will continue to harm the plaintiff and will seek enforcement of the fraudulent judgment.

138. Turan has no adequate remedy at law. A declaratory judgment is necessary in resolving and disposing of the questions whether the fraudulent judgment of the Almaty Court is enforceable and recognizable. Turan should have the determination of whether the Almaty Court's judgment is enforceable and recognizable determined quickly so that its business is not harmed by the fraudulent judgment.

139. Turan further seeks a preliminary and permanent injunction against defendants from enforcing the judgment in any way in any Court  in the United States or abroad or any attempts to attach Turan's assets until after this Court makes a determination in this case.

## FIFTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (Against Defendants  Dzakishev and APOG and Does 1-10)

140. Plaintiff realleges and incorporates by references, as though set forth in full, paragraphs 1- 139, above.

141. As alleged more specific ally herein in, Defendant APOG owned 20% and plaintiff Turan owned an 80% interest in Turan Entropetroleum.

142. As a partner, defendant APOG and its sole shareholder and officer Dzakishev owed a fiduciary duty of  loyalty and a fiduciary duty of care to plaintiff Turan.

143. Defendants APOG and Dzakishev breached these fiduciary duties owed to Plaintiff Turan by carrying out the fraudulent and illegal conduct as described herein.

144. As a direct and proximate result of the breaches by defendants APOG and Dzakishev, plaintiff Turan has suffered monetary damages as prayed for below.

145. Defendants APOG and Dzakishev are guilty of recklessness, oppression, fraud and malice within the meaning of Civil Code § 3294. An award of punitive and exemplary damages is justified in an amount according to proof.

## SIXTH CLAIM FOR RELIEF

### Tortious Interference with Beneficial Commercial Relationship

### (Against Defendants Turan Enerpetroleum, Dzhakishev, APOG, Ascent Investments(Belize),Ascent Investments(Wyoming), Callum Holdings, Jakishev, Keldibayev, Ostroushko, and Does1 -10)

146. Plaintiff realleges and incorporates by references, as though set forth in full, paragraphs 1-145, above.

147. Defendants at all times were aware of the contract Turan Enerpetroleum had with the government of Kazakhstan to exploit oil and gas resources in the Arys concession in Kazakhstan. Under the agreement, Turan was to invest into Turan Enerpetroleum for the development of the oil and gas resources.

148. By their fraudulent activity as alleged herein, defendants have caused harm to Turan's relations with the Kazakhstan government and have caused a fraudulent judgment to be entered in the Almaty Court which caused Turan to lose its 80% interest in Turan Enerpetroleum.

149. Because of the defendants' fraudulent conduct, Turan can no longer develop oil and gas resources in the Arys concession through Turan Enerpetroleum.

150. Defendants are guilty of recklessness, oppression, fraud and malice

1  within the meaning of Civil Code § 3294. An award of punitive and exemplary

2  damages is justified in an amount according to proof.

3  ## SEVENTH CLAIM FOR RELIEF

4  ### Civil Conspiracy

5  **(Against Defendants Turan Enerpetroleum, Dzhakishev, APOG, Ascent**

6  **Investments(Belize), Ascent Investments(Wyoming), Callum Holdings,**

7  **Jakishev, Keldibayev, Ostroushko, and Does1 -10)**

8  151. Plaintiff realleges and incorporates by references, as though set forth in

9  full, paragraphs 1-150, above.

10  152.  At all relevant times herein, defendants, and all of them, formed a civil

11  conspiracy to misappropriate Turan's interest in Turan Enerpetroleum through the

12  use of fraud and other unlawful acts.

13  153.  As a direct result of the defendants' conspiracy, Turan has been

14  damaged in that it lost its 80% interest in Turan Enerpetroleum by means of the

15  fraudulent conduct of the defendants.

16  154. Defendants are guilty of recklessness, oppression, fraud and malice

17  within the meaning of Civil Code § 3294. An award of punitive and exemplary

18  damages is justified in an amount according to proof.

19  ## EIGHTH CLAIM FOR RELIEF

20  ### Breach of Contract

21  ### (Against defendants Dzhakishev, APOG and Does 1-10)

22  155. Plaintiff realleges and incorporates by references, as though set forth in

23  full, paragraphs 1-154, above.

24  156.  On or about January 7, 2009, defendant Adilzhan Dzhakishev signed

25  On behalf of APOG, an Agreement to purchase a twenty percent (20%) interest in

26  Turan Enerpetroleum from plaintiff Turan. The agreement was executed in

27  Newport Beach, County of Orange California.

28  157.  Pursuant to the written agreement,  defendant APOG was to pay

$5,000,000 for the twenty  percent (20%) interest in Turan Enerpetroleum. Under the agreement, the entire $5,000,000 was to be deposited in to Turan Enerpetroleum's bank account to be used for further exploration for oil and gas on the Arys concession.

158. Additional terms in the agreement required defendant APOG to sign a promissory noted in the amount of $5,000,000 to Turan Enerpetroleum. The promissory note was signed by defendant Adilzhan Dzhakishev in Newport Beach, California.

159. In or about January 27, 2009, at Newport Beach, California defendant Adilzhan Dzakishev on behalf of APOG signed a new agreement were it would pay $600,000 directly to Turan Enerpetroleum for the purchase of its twenty percent (20%) interest. Further, APOG would pay Turan $4,400,000 for the right to purchase a call option in Turan's stock in the amount of 10,000,000 ordinary shares.

160. On February 3, 2009, defendant Adilzhan Dzhakishev made two bank wires in the amounts of $600,000 and $4,400,000 to Turan.

161. After defendant Adilzhan Dzhakishev transferred the money, defendant APOG submitted to The Ministry of Energy and Mineral Resources of the Republic of Kazakhstan ("Ministry of Energy")  a request to acquire a twenty percent (20%) interest in Turan Enerpetroleum.

162. In or about March 2009, the Ministry of Energy approved the application and allowed Turan Enerpetroleum to transfer a twenty percent (20%) participatory interest to APOG.

163. Defendants APOG and Adilzhan Dzhakishev did not provide the Ministry of Energy with the amended agreement. Rather, they claimed that they had transferred $5,000,000 directly to Turan Enerpetroleum.

164. Thereafter, at the Court hearings in Almaty, Khazakhstan defendants APOG and Adilzhan Dzhakishev provided false testimony and introduced exhibits

that claimed the $5,000,000 was paid by APOG to Turan Enerpetroleum. Rather, the truth is defendant Adilzhan Dzhakishev paid only $600,000 out of his personal Wells Fargo bank account for APOG's twenty percent (20%) interest in Turan Enerpetroleum.

165. On its part, plaintiff Turan has performed all conditions required under the written agreements with defendant APOG.

166. As a result of defendant APOG's breach of the written contract, Plaintiff Turan has suffered damages in an amount greater than $100,000,000 , according to proof at trial.

**WHEREFORE,** Plaintiff prays for judgment against Defendants, as follows:

**On The First Claim for Relief**

1. For general damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964 (c);

2. For prejudgment interest according to statute; and

3. For Turan's reasonable attorneys' fees and costs according to statute, 18 U.S.C. 1964(c).

**On the Second through Eighth Claims For Relief:**

1. For general damages according to proof at time of trial;

2. For equitable relief including a temporary restraining order, a preliminary injunction and permanent injunction that bars defendants from attempting to or enforcing the Almaty Court's judgment in the United States until this Court determines the merits of the instant lawsuit.

**On All Causes Of Action**

1. For interest on all amounts found to be due to Plaintiff from Defendants, at the  rate allowed by law, from the date said amounts or any part thereof became or becomes due.

///

///

1        2. For such other and further relief in favor of Plaintiff as the Court deems

2    just and proper.

3

4    DATED:  March 6, 2015                    Respectfully submitted,

5                                       HAMILTON LAW OFFICES

6

7                                      /s/John M. Hamilton

8                                      John M. Hamilton
                                       Attorney for Plaintiff Turan Petroleum, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff, Turan Petroleum Inc.  pursuant to Rule 38 of the Federal Rules of

3   Civil Procedure, hereby demands a trial by jury of all issues so triable in the

4   present action.

5

6   DATED:  March 6 , 2015                    HAMILTON LAW OFFICES

7

8                                            /s/John M. Hamilton_____
                                             John M. Hamilton

9                                            Attorney for Plaintiff Turan Petroleum, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28